# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| KIRK ALAN BURKHEAD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 5:25-cv-06001-RK |
| ) | |
| FEDERAL BUREAU OF ) | |
| INVESTIGATION AND U.S. ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court are Plaintiff's motion for summary judgment, (Doc. 16), and Defendants' cross motion for summary judgment, (Doc. 22). Plaintiff's motion for summary judgment is fully briefed. (Docs. 17, 22, 23.) Defendants' motion for summary judgment and suggestions in support have been filed, and Plaintiff has filed his suggestions in opposition. (Docs. 22, 23.)[1] After careful consideration and for the reasons explained below, Plaintiff's motion for summary judgment is **DENIED**, Defendants' cross motion for summary judgment is **GRANTED**, and this case is **DISMISSED** for lack of subject-matter jurisdiction.

## Background[2]

In 2005, Plaintiff pleaded guilty to and was convicted of the Class A misdemeanor of assault in the third degree. He was given a 120-day suspended sentence and was placed on probation for two years. On April 2, 2019, the Circuit Court of Daviess County, Missouri, entered an order expunging Plaintiff's 2005 conviction pursuant to § 610.140, RSMo.

After receiving the expungement of his 2005 conviction, Plaintiff successfully purchased a number of firearms including rifles, a pistol, and a shotgun. Plaintiff then applied for the transfer

---

[1] At the parties' request, the Court entered a scheduling order which combined the briefing schedule for Plaintiff's summary judgment motion and Defendants' cross motion for summary judgment. (Docs. 12, 13.) Pursuant to this briefing schedule, Defendants' reply brief in support of its motion for summary judgment is due on March 13, 2026. However, the Court finds that further briefing from Defendants is unnecessary and concludes that Defendants are entitled to summary judgment based on the record before the Court and the arguments made in Defendants' opening brief in support of summary judgment. Plaintiff has had an opportunity to fully respond to both motions and did so.

[2] Uncontroverted facts are incorporated without citation.

of firearm silencers from two different Federal Firearms Licensees ("FFLs"). As discussed more fully below, to apply for the transfer of a silencer Plaintiff was required to submit an ATF Form 4 and applicable tax to the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") for approval pursuant to the National Firearms Act, 26 U.S.C. § 5812 . The ATF denied both of Plaintiff's applications for the transfer of a silencer.[3]

Plaintiff appealed the denials of his applications for the transfer of a silencer by submitting two "Voluntary Appeal File" ("VAF") requests to the FBI.[4] Plaintiff received two responses to his VAF requests. The first is a letter dated August 28, 2024, from the FBI Criminal Justice Information Services Division, NICS Section. The letter states that Plaintiff is "not eligible to be entered into the VAF" and that his "FBI Identity History Summary and/or state-maintained criminal history reveals a potentially prohibitive arrest." (Doc. 17-2 at 1.) The letter refers specifically to Plaintiff's August 25, 2005 arrest. (*Id.*) The second letter is dated September 19, 2024. It is substantively similar to the first letter and again states that Plaintiff is "not eligible to be entered into the VAF" and that his "FBI Identity History Summary and/or state-maintained

---

[3] Plaintiff's statement of uncontroverted facts vaguely states as to both attempts to buy a silencer only that Plaintiff's "application was denied." (Doc. 17 at ¶¶ 9-10.) However, federal law requires that applications for the transfer of certain firearms—including silencers—must be submitted to *and approved by* ATF through a Form 4 rather than through the normal FFL-purchase process for a regular or common handgun, rifle, or shotgun. Plaintiff's applications for transfers of silencers were thus denied by ATF through this process.

Moreover, Plaintiff's arguments show that Plaintiff was denied the transfer of silencers by the ATF as part of ATF's review of his Form 4s. (*See* Doc. 23 at 9 (noting ATF has integrated a NICS check and arguing that "[d]espite this procedural integration, the underlying denial, if based on erroneous NICS information, remains tied to . . . § 922(t)."); *id.* at 10 ("If an NFA Form 4 for a silencer is denied solely because of erroneous NICS information . . . ."); *id.* at 17 ("The fact that the ATF effectuates the denial via a 26 U.S.C. § 5812 approval (rather than an FFL's NICS "deny") does not change the fact that the root cause of the denial is an alleged erroneous § 922(g) record.").)

Plaintiff failed to attach to his complaint or motion for summary judgment any documentation of the original denials of his applications for transfers of silencers by ATF. Instead, Plaintiff only attached copies of the letters he received from the FBI after attempting to open a Voluntary Appeal File in response to the denials by ATF. These letters are not the original denials from ATF.

[4] The VAF is "designed for individuals who believe they are legally allowed to receive/possess firearms, yet they have received a denial decision or experience extended delays with their NICS background checks." *Voluntary Appeal File*, FBI.gov, https://www.fbi.gov/how-we-can-help-you/more-fbi-services-and-information/nics/voluntary-appeal-file#Frequently-Asked%20Questions [https://perma.cc/QFD6-CJGU]. If approved, the individual receives a unique PIN that "gives NICS access to information retained in the individual's VAF," i.e., allowing the FBI to retain certain documents and other identifying information for the individual, although it "does not itself negate the fact that a background check must still be completed with subsequent firearm transfers from FFLs."

2

criminal history reveals a potentially prohibitive arrest." (*Id.* at 3.) This letter does not specifically mention Plaintiff's 2005 Conviction but states that "Missouri expungement orders are ONLY valid for 18 U.S.C. 922(g)(1) purposes." (*Id.*)

On or about October 14, 2024, Plaintiff's representative submitted additional documents regarding Plaintiff's expungement to the FBI. In response to the submission of additional information, Plaintiff received a letter from the FBI dated November 25, 2024. The letter again states that Plaintiff is "not eligible to be entered into the VAF" and that his "FBI Identity History Summary and/or state-maintained criminal history reveals a potentially prohibitive arrest, August 25, 2005." (Doc. 17-4 at 1.)

In response to his applications for the transfer of a silencer being denied by the ATF and the subsequent denials for a Voluntary Appeal File by the FBI, Plaintiff filed this action on January 2, 2025, pursuant to 18 U.S.C. § 925A. (Doc. 1.)

**Legal Standard**

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment on a claim if the movant has made a showing that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). It is "appropriate to decide [a] case on summary judgment" when "the parties do not dispute the facts . . . [and] the issues are purely legal." *Dowdle v. Nat'l Life Ins. Co.*, 407 F.3d 967, 970 (8th Cir. 2005).

**Discussion**

Plaintiff argues that he was improperly denied the transfer of a silencer because of erroneous information or an erroneous determination disseminated through a NICS background check indicating that he is prohibited under 18 U.S.C. § 922(g) from receiving a silencer notwithstanding the expungement of his 2005 Conviction.[5] Plaintiff argues that his 2005 Conviction was expunged and that the legal effect of such expungement under Missouri law is to completely restore his right to possess a firearm. Plaintiff thus filed suit pursuant to 18 U.S.C. § 925A, which provides a remedy for the erroneous denial of a firearm in certain circumstances. Defendants argue that Plaintiff cannot seek relief for the denial of the transfer of a silencer in this

---

[5] The Court notes again that it is not clear on the summary judgment record why the ATF denied Plaintiff's Form 4 application to purchase a silencer because Plaintiff did not provide documentation of the original denials by the ATF.

3

case because Defendants are entitled to sovereign immunity. Defendants argue that 18 U.S.C. § 925A does not waive the United States' sovereign immunity as to the ATF's decision denying Plaintiff's Form 4 for the transfer of a silencer under the National Firearms Act, 26 U.S.C. § 5812, rather than the Brady Handgun Violence Prevention Act more generally.

### I. Statutory and Regulatory Framework for Firearm Transfers

Addressing the parties' motions for summary judgment first requires a summary of the relevant statutory and regulatory framework for firearm transfers.

In 1993, Congress enacted the Brady Handgun Violence Prevention Act ("Brady Act"). Pub. L. 103-159, 107 Stat. 1536 (1993). The Brady Act amended the Gun Control Act ("GCA") and required the U.S. Attorney General to establish a background check system for use in the purchase or transfer of firearms. *Id.* Accordingly, the Attorney General established the National Instant Background Check System or NICS. *See* 28 C.F.R. §§ 25.1 *et seq.* NICS is managed by the FBI Criminal Justice Information Services Division, NICS Section.

The Brady Act requires Federal Firearms Licensees ("FFL") to contact NICS to perform a background check on a purchaser before most firearm transfers. *See* 18 U.S.C. § 922(t)(1). Title 18 of the U.S. Code broadly defines "firearm" as:

> (A) any weapon (including starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.

18 U.S.C. § 921(a)(3). When an FFL contacts NICS to perform a background check, NICS verifies that the seller is licensed, conducts a search of databases for any record suggesting that the purchaser is prohibited from acquiring a firearm, and issues a determination that the transaction may proceed, is delayed, or is denied. 28 C.F.R. § 25.6(c). The FFL may complete the transfer of the firearm if "3 business days . . . have elapsed since the licensee contacted [NICS], and the system has not notified the licensee" that the transferee cannot obtain a firearm. 18 U.S.C. § 922(t)(1)(B)(ii). Section 922(t)(3) identifies the types of firearm transfers exempt from the § 922(t)(1) requirement that an FFL contact NICS to perform a background check. Most relevant here, the requirement that an FFL contact NICS "shall not apply to a firearm transfer between a licensee and another person if[] the Attorney General has approved the transfer under section 5812 of the Internal Revenue Code of 1986." 18 U.S.C. § 922(t)(3)(B).

Pursuant to the Internal Revenue Code, certain types of firearms regulated by the National Firearms Act ("NFA") require the submission of an application and applicable tax to ATF and ATF approval before the firearm may be transferred. 26 U.S.C. §§ 5811 & 5812.[6] Title 26 of the U.S. Code defines "firearm" to include only a narrow class of specialized weapons including short-barreled rifles, destructive devices, and "any silencer (as defined in section 921 of title 18, United States Code)." 26 U.S.C. § 5845(a).[7] For this narrow class of specialized weapons regulated by the NFA, "[t]he transferee of a firearm shall not take possession of the firearm unless the [ATF] has approved the transfer and registration of the firearm to the transferee." 26 U.S.C. § 5812(b). In other words, an NFA-regulated firearm, including a silencer, cannot be transferred without explicit permission from the ATF.

To seek ATF approval for the transfer of a silencer, a prospective purchaser must submit an ATF Form 4 and pay any applicable tax to the ATF.[8] 26 U.S.C § 5812(a); 27 C.F.R. § 479.84. Upon review by the ATF, "[a]pplications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law." 26 U.S.C § 5812(a). In 1998, five years after the Brady Act amending the GCA was passed, the ATF chose by regulatory rulemaking to consult NICS to aid in its determination of whether to approve a transfer of an NFA-regulated firearm. *See* 63 Fed. Reg. 58281 (Oct. 29, 1998) (amending 27 C.F.R. § 179.86 to add a sentence requiring that the "Director shall contact the National Instant Criminal Background Check System" to determine action on an application for transfer of firearms); *see also* 27 C.F.R. § 479.86.[9] There

---

[6] Title 26 U.C.S. § 5812 originally provided authority to the Secretary of Treasury to accept applications for and approve transfers of NFA firearms. However, the Secretary of Treasury has since delegated its authority under 26 U.S.C. § 5812 to the ATF. *See Demko v. United States*, 216 F.3d 1049, 1051 (D.C. Cir. 2000) (citing Treasury Dep't Order No. 221, 1972-1 C.B. 777).

[7] The NFA's definition of a "firearm" is thus much narrower than the Brady Act's definition codified at 18 U.S.C. § 921(a)(3).

[8] Historically, there has been a $200 tax stamp for each application for transfer of a firearm regulated by the NFA. However, as of January 1, 2026, this tax stamp has been reduced to $0 for silencers. *See* Pub. L. 119-21, sec. 70436 (2025).

[9] Title 27 C.F.R. § 179.86 was later recodified at 27 C.F.R. § 479.86 in 2003 as part of a larger reorganization of title 27 of the Code of Federal Regulations. *See* 68 Fed. Reg. 3752 (Jan. 24, 2003). The actual text of the regulation remains the same.

is no language in 26 U.S.C. § 5812 requiring that the ATF approve an application for the transfer of a firearm so long as certain requirements are met.[10]

Finally, § 104 of the Brady Act, codified at 18 U.S.C. § 925A, establishes a remedy for the erroneous denial of a firearm and waives sovereign immunity in specific circumstances:

> Any person denied a firearm pursuant to subsection (s)[11] or (t) of section 922 –
>
> (1) due to the provision of erroneous information relating to the person by any State or political subdivision thereof, or by the national instant criminal background check system established under section 103 of the Brady Handgun Violence Prevention Act; or
>
> (2) who was not prohibited from receipt of a firearm pursuant to subsection (g) or (n) of section 922,
>
> may bring an action against the State or political subdivision responsible for providing the erroneous information, or responsible for denying the transfer, or against the United States, as the case may be, for an order directing that the erroneous information be corrected or that the transfer be approved . . . .

18 U.S.C. § 925A.

## II. Sovereign Immunity

Defendants argue that they are entitled to summary judgment because 18 U.S.C. § 925A does not contain an unambiguous waiver of the government's sovereign immunity from suits challenging a denial of an application for transfer of a silencer pursuant to the NFA, particularly 26 U.S.C. § 5812. Plaintiff argues that the ATF's review of applications for the transfer of a silencer involve a NICS background check tied to 18 U.S.C. § 922(t), which is sufficient to bring the denial of such transfers within the waiver of sovereign immunity articulated in 18 U.S.C. § 925A.

"Federal courts generally lack jurisdiction to hear claims against the United States because of sovereign immunity." *Barnes v. United States*, 448 U.S. 1065, 1066 (8th Cir. 2006); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may

---

[10] Accordingly, some courts have concluded that the ATF's authority to approve or deny such transfers is discretionary. *See Kaszycki v. United States*, No C19-1943 RSM, 2020 WL2838598, at *4 (W.D. Wash. June 1, 2020) ("[T]hese statutes [26 U.S.C. §§ 5512 and 5522] gave ATF discretion to approve or not approve Mr. Kaszycki's applications for silencers and to modify a rifle); *Clark v. Restaino*, No. 1:22-cv-00193-BLW, 2022 WL 4585830, at *3 (D. Idaho Sept. 29, 2022) ("[A] Washington federal district court concluded that the ATF has the discretion to approve—or not approve—applications to make silencers. . . . This Court agrees.") (citing *Kaszycki*)).

[11] Subsection 922(s) expired 60 months after its date of enactment. Therefore, § 925A now only provides an avenue for relief for denials of firearms pursuant to § 922(t).

not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."). "A waiver of sovereign immunity is strictly and narrowly construed in favor of the United States, and the plaintiff bears the burden of demonstrating the waiver." *Parker v. United States*, No. 4:19-cv-3251 HEA, 2020 WL 1888814, at *1 (E.D. Mo. Apr. 16, 2020) (citing *Snider v. United States*, 468 F.3d 500, 509 (8th Cir. 2006)). "Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33-34 (quoting *Irvin v. Dep't of Veterans Affs.*, 498 U.S. 89, 95 (1990)).

Here, the parties agree that 18 U.S.C. § 925A provides a waiver of sovereign immunity for any person denied a firearm "pursuant to subsection (s) or (t) of section 922" where that denial is made pursuant to allegedly erroneous information provided by NICS. The parties disagree, however, as to whether the ATF's denials of Plaintiff's applications for the transfer of silencers fall within this waiver provision. In other words, the question is whether the ATF's denials of Plaintiff's applications were "pursuant to § 922(t)," or some other authority. The Court is persuaded by Defendants' arguments and concludes that the ATF's denials of Plaintiff's applications for the transfer of a silencer were pursuant to its authority under 26 U.S.C. § 5812, and not pursuant to 18 U.S.C. § 922(t), despite the use of a NICS background check during the ATF's review or approval process for the requested transfer of a silencer.

The relevant statutory and regulatory framework for the transfer of firearms establishes two distinct processes for the transfer of a firearm depending on whether that firearm is regulated by the NFA. *See United States v. McGill*, 618 F.3d 1273, 1278 (11th Cir. 2010) ("The NFA establishes a separate regulatory structure for a narrow class of specialized weapons."). On the one hand, for non-NFA firearms, an FFL must contact NICS and initiate a background check pursuant to § 922(t)(1) prior to the transfer of a firearm. Under applicable statutory and regulatory law, the application process to purchase a non-NFA firearm proceeds as follows:

- Step 1 – A prospective purchaser goes to an FFL to purchase a non-NFA firearm.
- Step 2 – The FFL contacts NICS to conduct a background check on the prospective purchaser as required by 18 U.S.C. § 922(t)(1).
- Step 3 – NICS informs the FFL whether the transfer is approved, delayed, or denied; alternatively, the transfer may proceed after three business days if the FFL does not receive communication from NICS indicating that the prospective purchaser is ineligible to receive the firearm.

If the transfer is denied based on allegedly erroneous information provided by NICS, the denial is clearly "pursuant to 18 U.S.C. § 922(t)" and falls within the waiver of sovereign immunity under 18 U.S.C. § 925A. On this, the parties agree.

On the other hand, for firearms subject to the NFA—including silencers—an FFL has no obligation to contact NICS to initiate a background check pursuant to § 922(t). Instead, the application process for NFA-regulated firearms, including silencers, proceeds as follows:

- Step 1 – A prospective purchaser goes to an FFL to purchase a silencer.
- Step 2 – The FFL must submit an ATF Form 4 and any applicable tax to the ATF as required by 26 U.S.C. §§ 5811 and 5812 and implementing regulations.
- Step 3 – The ATF reviews the application based on the requirements in 26 U.S.C. § 5812 and its implementing regulations.
- Step 4 – The ATF denies or approves the transfer. A denial ends the inquiry as "the transferee of a firearm shall not take possession of the firearm unless the Secretary has approved the transfer." 26 U.S.C. § 5812(b). An approval also ends the inquiry as an FFL is not required to initiate a NICS background check if the ATF approved the transfer under § 5812.

Thus, a denial of a transfer of a silencer by the ATF does not implicate 18 U.S.C. § 922(t) in the way that the denial of a transfer of a non-NFA firearm based on an FFL-initiated NICS background check does. When the NFA applies, the ATF considers the submitted Form 4 pursuant to 26 U.S.C. § 5812 and its implementing regulations. One of these regulations, 27 C.F.R. § 479.86, does require that the ATF contact NICS to conduct a background check. Plaintiff argues that the ATF's "procedural integration" of a NICS background check causes "the underlying denial, if based on erroneous NICS information, [to] remain[] tied to the GCA's 18 U.S.C. § 922(t) mandate." (Doc. 23 at 9.) Plaintiff further argues that there is no carve-out from the § 922(t) mandate for a NICS background check for NFA-regulated firearms. However, these arguments are contrary to the statutory text and to the requirement that § 925A be narrowly or strictly construed as a waiver of the United States' sovereign immunity.

The NFA, and not the Brady Act, governs the transfer ("purchase") of a silencer. Title 18 U.S.C. § 922(t)(3) exempts transfers approved by the ATF pursuant to 26 U.S.C. § 5812 from the requirement that an FFL contact NICS for a background check.[12] When 18 U.S.C. § 922(t) was passed in 1993, the ATF was not required to contact NICS for a background check to approve an

---

[12] In other words, when a transfer must be approved by the ATF, the NFA (rather than the Brady Act) governs.

application pursuant to 26 U.S.C. § 5812. Nor did the Brady Act amend 26 U.S.C. § 5812 in any way to incorporate the § 922(t) background check requirement into that process. Thus, from 1993 to 1998 the ATF was not required to contact NICS for a background check to approve an application pursuant to 26 U.S.C. § 5812. Now, the ATF is only required to do so by regulation. *See* 27 C.F.R. § 479.86. Regulations alone are insufficient to waive sovereign immunity. *Heller v. United States*, 776 F.2d 92, 98 n.7 (3d Cir. 1985) ("[G]overnmental regulations alone, without the express intent of Congress, cannot waive sovereign immunity."); *see also United States v. N.Y. Rayon Importing Co.*, 329 U.S. 654, 661 (1947) ("[O]fficers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress."). Even though the "cause" of the denial of Plaintiff's attempt to purchase a silencer may be the same as the denial of a purchase of a regular non-NFA firearm from an FFL (presuming the required NICS background check initiated by the FFL was unfavorable)—i.e., an allegedly erroneous § 922(g) record—Plaintiff's argument incorrectly focuses on the means by which the denial is made (a NICS background check) rather than *the source of authority* for the denial decision. Section 925A waives sovereign immunity to challenge a NICS background check and subsequent denial of a firearms purchase pursuant to the Brady Act. It does not clearly and unambiguously waive sovereign immunity to challenge a NICS background check and denial by the ATF of a transfer for a NFA-regulated firearm, including a silencer, under the NFA and 28 U.S.C. § 5812.[13]

The only other court to directly address this issue came to the same conclusion. *See Kaszycki v. United States*, No. C19-1943 RSM, 2020 WL 2838598, at *3 (W.D. Wash. June 1, 2020). Kaszycki sought to purchase seven silencers, and all seven Form 4 applications were denied by the ATF due to his NICS background check being in "open" status. *Id.* at *1. Kaszycki subsequently learned that his applications were denied pursuant to § 922(g)(4), which makes it unlawful for any person who has been committed to a mental institution to receive a firearm. *Id.* However, Kaszycki alleged that he had never been involuntarily committed, and he brought a claim for wrongful denial of a firearm pursuant to 18 U.S.C. § 925A.

In determining that sovereign immunity barred Kaszycki's claim, the Western District of Washington noted that the NFA establishes a separate regulatory structure for a narrow class of

---

[13] It is, however, squarely within Congress' power, if it chooses, to waive sovereign immunity under the NFA like it did under the Brady Act.

specialized weapons including silencers and that the statutory framework creates a "carve-out for the ATF to approve or deny applications under § 5812, and that this is different than applications approved or denied after an FFL initiates an NICS background check pursuant to 18 U.S.C. § 922(t)." *Id.* at *3. The *Kaszycki* Court concluded that the "ATF acted on its own pursuant to section 5812 in not approving these applications" and therefore "Mr. Kaszycki cannot bring a cause of action under 18 U.S.C. § 925A and he has failed to show a waiver of sovereign immunity." *Id.* The Court finds *Kaszycki* persuasive and adopts the same analysis.

When the ATF denies a Form 4 requesting a transfer of an NFA-regulated firearm, such as a silencer, it does so pursuant to its distinct statutory authority in 26 U.S.C. § 5812. This denial does not implicate the 18 U.S.C. § 922(t) mandate that FFLs contact NICS to conduct a background check prior to transferring non-NFA firearms. The ATF's self-imposed regulatory requirement that it contact NICS prior to determining whether to approve the transfer of a silencer does not change this determination. Title 18 U.S.C. § 925A only waives the United States' sovereign immunity for challenges to denials of transfers of firearms "pursuant to" 18 U.S.C. § 922(t), not denials pursuant to 26 U.S.C. § 5812. Plaintiff has not argued that any other authority apart from 18 U.S.C. § 925A would waive the United States' sovereign immunity in this case. Therefore, Defendants are entitled to sovereign immunity.[14]

## Conclusion

Accordingly, after careful consideration and for the reasons explained above, the Court **ORDERS** that Plaintiff's motion for summary judgment, (Doc. 16), is **DENIED**, Defendants' cross motion for summary judgment, (Doc. 22), is **GRANTED**, and this case is **DISMISSED** for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: February 12, 2026

---

[14] Having determined that the Court lacks subject-matter jurisdiction, the Court does not reach the merits of Plaintiff's claim that he was erroneously denied the transfer of a silencer.